FILED
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS

OCT 08 2026

CLERK, US BANKRUPTCY COURT

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 26-43461 |
| | § | |
| JESSICA ESCUE, | § | Chapter 7 |
| Debtor. | § | |
| | § | |
| STEPHEN McKAY HARCUS, | § | |
| Movant, | § | |
| v. | § | |
| JESSICA ESCUE, Debtor, and | § | |
| MARK A. WEISBART, Trustee, | § | |
| Respondents. | § | |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO RESIDENTIAL REAL PROPERTY AT 1929 N. LAKE TRAIL, DENTON, TEXAS 76201**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE SHOWN IN THE CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING WITH APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

Movant Stephen McKay Harcus, appearing pro se, moves under 11 U.S.C. § 362(d) and Federal Rule of Bankruptcy Procedure 4001(a) for relief from the automatic stay, and states:

**Jurisdiction**

1. The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

**Facts**

2. Movant owns the residential property at 1929 N. Lake Trail, Denton, Texas 76201 (the "Property").

3. Movant and Debtor signed a residential lease for a term of February 22, 2026 to February 22, 2027, at $2,500 per month, due on the 1st (Exhibit A).

4. Rent for June, July, August and September 2026 is unpaid. Rent for October 2026, due October 1, 2026, was not paid within the grace period and is also past due. Debtor's June 2026 payment was reversed through her bank on July 13, 2026, and the $2,500 was returned to her; it has not been repaid. Unpaid rent on the petition date was $12,500 (Exhibit B, ledger).

5. On September 8, 2026, Movant, through his property manager, gave Debtor written notice to pay or vacate by certified mail, regular mail and email (Exhibit D, with certified mail receipt). Debtor did neither. The notice demanded $10,690.95, which included late fees. Exhibit B leaves out all late fees and adds October rent.

6. On September 14, 2026, Movant filed an eviction suit in the Justice Court, Precinct 5, Denton County, Texas. Trial was set for 9:30 AM on October 5, 2026 (Exhibit C).

7. On October 2, 2026, three days before the eviction trial, Debtor filed this Chapter 7 case, which stayed the eviction. Debtor listed the lease on Schedule G and listed Movant as a creditor on Schedule E/F.

8. Debtor holds only a possessory leasehold interest in the Property. Debtor has no ownership interest and no equity in it.

**Grounds for relief**

9. **Cause, § 362(d)(1).** Movant's interest is not adequately protected. Movant has received no rent for June through October 2026, and Movant continues to pay the mortgage, taxes and insurance on the Property with no income from it. Each month the stay continues adds $2,500 of loss. In a September 10, 2026 letter, Debtor wrote that she would pay rent only "once a lawful, agreed-upon amount has been established."

10. **No equity, § 362(d)(2).** Debtor has no equity in the Property, and a leasehold in default is not necessary to an effective reorganization. This is a Chapter 7 liquidation, so no reorganization is in prospect, and the Notice of Chapter 7 Case states that no property appears to be available to pay creditors.

11. **Timing of the filing.** The petition was filed three days before the eviction trial, after four months of non-payment. The Court may consider this timing in finding cause.

12. Under 11 U.S.C. § 365(d)(1), if the trustee does not assume the lease within 60 days of the October 2, 2026 order for relief, it is deemed rejected on December 1, 2026. Movant asks that relief not be delayed until then, given continuing non-payment.

**Relief requested**

Movant asks the Court to:

(a) Terminate the automatic stay under 11 U.S.C. § 362(d) so Movant may pursue all state-law remedies to recover possession of the Property, including the pending eviction suit and any writ of possession;

(b) Waive the 14-day stay of the order under Federal Rule of Bankruptcy Procedure 4001(a)(3) so the order is effective immediately; and

(c) Grant any other relief that is just.

Movant does not seek, by this motion, to collect any pre-petition debt from Debtor personally.

Dated: October 8, 2026

Respectfully submitted,

Stephen McKay Harcus, pro se
2604 Starling Street
Denton, Texas 76205
940-597-8777
stephenharcus@gmail.com

## CERTIFICATE OF SERVICE

I certify that on October 9, 2026, a true copy of this Motion, its exhibits and the proposed order was served by certified mail and by first-class U.S. mail, postage prepaid, on:

- Debtor: Jessica Escue, 1929 N. Lake Trail, Denton, Texas 76201-0601
- Debtor's attorney: none, Debtor is pro se
- Trustee: Mark A. Weisbart, Chapter 7 Trustee, 10501 N. Central Expressway, Suite 106, Dallas, Texas 75231-2203
- U.S. Trustee, Region 6: 1100 Commerce Street, Room 976, Dallas, Texas 75242

Stephen McKay Harcus

**Exhibits**

Exhibit A: Residential lease
Exhibit B: Rent ledger through October 1, 2026
Exhibit C: Petition for eviction, Justice Court, Precinct 5
Exhibit D: Notice to pay or vacate, September 8, 2026, with certified mail receipt

# EXHIBIT A

Residential Lease, 1929 N. Lake Trail, Denton, Texas, with addenda

In re Jessica Escue, Case No. 26-43461 (Bankr. E.D. Tex.)

TEXAS REALTORS

# RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2026

**1. PARTIES:** The Parties to this lease are:

the owner of the Property, Landlord,: Stephen Harcus ; and

Tenant(s): Jessica Escue .

Occupant(s): Tenant may use the Property as a private residence only. The only persons Tenant may permit to reside on the Property during the term of this lease are: (*include names and DOB of all Occupants*)
Jessica Escue - [redacted]1979

"Tenant" means a person who is authorized by a lease to occupy a dwelling to the exclusion of others and, who is obligated under the lease to pay rent; "Occupant" means a person who has the landlord's consent to occupy a dwelling but has no obligation to pay the rent for the dwelling.

**2. PROPERTY:** Landlord leases to Tenant the following real property:

Address: 1929 N Lake Trail, Denton, TX 76201
legally described as: North Lake Park Add Ph 4

in Denton County, Texas, together with the following non-real-property items: Refrigerator, Microwave, Washer and Dryer

The real property and the non-real-property are collectively called the "Property".

**3. LEASE TERM AND RENT FEES:**

A. Primary Term: The Primary Term of this lease begins and ends as follows:

**Commencement Date:** 02/22/2026 **Expiration Date:** 02/22/2027
*Note: Written notice of termination is required* 45 *days before Expiration Date. (see Paragraph 5 for further details)*

B. Monthly Base Rent: The monthly rent is $2,500.00. *See Paragraph 4 for details.*

C. First Month's Rent: Tenant will pay **first month's rent** made payable to ☑ Landlord or ☐ Listing Broker or ☐ Property Manager on or before 03/01/2026.

D. Prorated Rent: The prorated rent of $623.00 is due on or before 02/22/2026.

E. Security Deposit: On or before: ☑ execution of this lease or ☐ ______ (date), Tenant will pay a Security Deposit in the amount of $2,500.00.

F. Additional Monthly Fees: ☐ Animal $____, ☐ benefit package $____ ☐ ______ $____, ☐ ______ $____, ☐ ______ $____, ☐ ______ $____

**4. RENT DETAILS:**

A. Time of Payment:

(1) Time is of the essence for the payment of rent (strict compliance with rental due dates is required). Weekends, holidays, and mail delays do not excuse Tenant's obligation to timely pay rent. Tenant must pay all rent timely and without demand, deduction, or offset, except as permitted by law or this lease.

(2) Monthly rent: Tenant will pay the monthly rent so that Landlord receives the monthly rent on or before *(check only one box)*:

☑ (a) the first day of each month during this lease, or

☐ (b) ____________________

B. Place of Payment: Unless this lease provides otherwise, Tenant will remit all amounts due to Landlord under this lease to the following person or entity at the place stated and make all payments payable to the named person or entity. Landlord may later designate, in writing, another person or place to which Tenant must remit amounts due under this lease.

Name: Stephen Harcus

Place: 2604 Starling Street, Denton, TX 76205

**Notice: Place the Property address and Tenant's name on all payments.**

C. Method of Payment:

(1) Landlord ☑ requires ☐ does not require Tenant(s) to pay monthly rents by one payment.

(2) Unless the Parties agree otherwise, Tenant may not pay rent in cash and will pay all rent and other fees by *(select one or more)*: ☑cashier's check ☐electronic payment ☐money order ☐personal check or ☐other means acceptable to Landlord.

(3) Landlord ☐may or ☑may not charge a reasonable fee to process or accept payment by *(select one or more only if Landlord indicates a reasonable fee may be charged)*: ☐cashier's check ☐electronic payment ☐money order ☐personal check or ☐other means acceptable to Landlord.

(4) If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is not honored by the institution on which it was drawn, Landlord may require Tenant to pay such amount and any subsequent amounts under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

D. Rent Increases: There will be no rent increases through the Primary Term. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

E. Late Fees: If Landlord does not actually receive a rent payment in the full amount at the designated place of payment by the 3rd day of each month at 11:59pm, Tenant will pay Landlord for each late payment: ***Notice: §92.019, Texas Property Code prohibits assessing a late fee until rent has remained unpaid for at least two full days after the date on which the rent is due.***

(1) an initial late charge equal to *(check one box only)*: ☑ (a) $50.00; or ☐ (b)_____% of one month's rent; **and**

(2) additional late charges of *(check one box only)*: ☑ (a) $25.00; or ☐ (b)_____% of one month's rent per day thereafter until rent and late charges are paid in full. Additional late charges for any one payment may not exceed more than 30 days.

(3) LATE PAYMENT DETAILS: For the purposes of paying rent and any late charges, the mailbox is not the agent for receipt for Landlord (the postmark date is not the date Landlord receives the payment). The parties agree that the late charge is reasonable based on uncertain damages to the Landlord related to the late payment of rent, including direct or indirect expenses, direct or indirect costs, or overhead associated with the collection of late payment. Landlord's acceptance of a late payment does not waive Landlord's right to exercise remedies under Paragraph 24.

F. Returned Payment: Tenant will pay Landlord $100.00 for each payment Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, plus any late charges until Landlord receives payment. Tenant must make any returned payment good by paying such amount(s) plus any associated charges in a form satisfactory to landlord.

G. Application of Funds: Regardless of any notation on a payment, Landlord may apply funds received from Tenant first to any non-rent obligations of Tenant, including but not limited to, late charges, returned payment charges, repairs, brokerage fees, periodic utilities, animal charges, and then to rent.

H. Delay of Occupancy: Tenant must occupy the Property within 5 days after the Commencement Date. If Tenant is unable to occupy the Property by the 5th day after the Commencement Date because of construction on the Property or a prior tenant's holding over of the Property, Tenant may terminate this lease by giving written notice to Landlord before the Property becomes available to be occupied by Tenant, and Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by construction or a prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items.

**5. AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:** Time is of the essence for providing notice of termination. If a box is not checked under Paragraph 5A, Paragraph 5A(1) will apply. If a box is not checked under Paragraph 5B, Paragraph 5B(1) will apply.

A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party written notice of termination not less than: *(Check only one box.)*

☐ (1) 30 days before the Expiration Date.

☑ (2) 45 days before the Expiration Date.

If Landlord or Tenant fails to provide the other party timely written notice of termination as required by Paragraph 5A, the lease automatically renews on a month-to-month basis. The Landlord or Tenant then must provide a subsequent written notice of termination as required by Paragraph 5B.

B. If this lease automatically renews on a month-to-month basis, it will continue to renew on a month-to-month basis until either party provides written notice of termination to the other party and the notice of termination will be effective: *(Check only one box.)*

☑ (1) on the last day of the month following the month in which the notice is given. Landlord is not obligated to prorate rent even if Tenant surrenders the Property before the termination date.

☐ (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if necessary, rent will be prorated on a daily basis.

**6. ANIMALS:**

A. Unless the parties agree otherwise in writing, Tenant may not permit, even temporarily, any animal on the Property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect). An assistance animal is required to be reported to the Landlord with accompanying documentation as required by the Texas Department of Housing and Community Affairs.

B. If Tenant violates this Paragraph 6 or any agreement to keep an animal on the Property, Landlord may take all or any of the following actions:
   (1) declare Tenant to be in default of this lease and exercise Landlord's remedies under Paragraph 24;
   (2) charge Tenant, as additional rent, an initial amount of $ 500.00 and $ 50.00 per day thereafter per animal for each day Tenant violates the animal restrictions;
   (3) remove or cause to be removed any unauthorized animal and deliver it to appropriate local authorities by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized animal; and
   (4) charge to Tenant the Landlord's cost to:
      (a) remove any unauthorized animal;
      (b) exterminate the Property for fleas and other insects;
      (c) clean and deodorize the Property's carpets and drapes; and
      (d) repair any damage to the Property caused by the unauthorized animal.

C. When taking any action under Paragraph 6B Landlord will not be liable for any harm, injury, death, or sickness to any animal.

**7. SECURITY DEPOSIT DETAILS:**

A. "Security Deposit" has the meaning assigned to that term in §92.102, Texas Property Code. Any additional deposits Tenant pays to Landlord, other than the Security Deposit, will become part of the Security Deposit.

B. Withholding Last Month's Rent: Texas Property Code §92.108 provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent. Bad faith violations may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.

C. Accounting and Refund: The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Property **and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.** Any refund of the Security Deposit will be made payable to all Tenants named in this lease.

D. Interest: No interest or income will be paid to Tenant on the Security Deposit. Landlord may place the Security Deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord or Landlord's representative.

E. Deductions:
   (1) Landlord may deduct reasonable charges from the Security Deposit, excluding *normal wear and tear. **"Normal wear and tear" means deterioration that occurs without negligence, carelessness, accident, or abuse.*
   (2) Reasonable charges may include, but are not limited: reasonable costs associated to repair the Property; costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain the Property; unpaid or accelerated rent; unpaid late charges; unpaid utilities and utility expenses Landlord incurs to maintain utilities to the Property as required by this Lease; unpaid animal charges; replacing unreturned keys, garage door openers, security devices, or other components; the removal of unauthorized locks or fixtures installed by Tenant; Landlord's cost to access the Property if made inaccessible by Tenant; missing or burned-out light bulbs and fluorescent tubes (at the same location and of the same type and quality that are in the Property on the Commencement Date); packing, removing, and storing abandoned property; removing abandoned or illegally parked vehicles; costs of reletting (as described in Paragraph 24), if Tenant is in default; attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant; mailing costs associated with sending notices to Tenant for any violations of this lease; any other unpaid charges or fees or other items for which Tenant is responsible under this lease; cost to restore walls, flooring, landscaping or any alteration to the Property not approved in writing by Landlord; damages to the Property

caused by smoking, including but not limited to stains, burns, odors, and removal of debris; and costs to rekey certain security devices, as provided in Paragraph 16.)

(3) If deductions exceed the Security Deposit, Tenant will pay to Landlord the excess within 10 days after Landlord makes written demand.

**8. UTILITIES:**

A. Tenant will pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Property (for example, electricity, gas, water, wastewater, garbage, telephone, alarm monitoring systems, cable, and Internet connections) except the following which Landlord will pay: ______

Unless otherwise agreed, amounts under this Paragraph 8 are payable directly to the service providers.

B. Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services.
**Notice: Before signing this lease, Tenant should determine if all necessary utilities are available to the Property and are adequate for Tenant's use.**

**9. USE AND OCCUPANCY:**

A. Phone Numbers and E-mail: Tenant must promptly inform Landlord of any changes in Tenant's phone number(s) and e-mail not later than 5 days after a change.

B. HOA Rules: This Property ☐is or ☑is not a part of an HOA. ______

(*Include the name of the HOA if there is one*). Tenant must comply with any owners' association rules or restrictive covenants affecting the Property. Tenant will reimburse Landlord for any fines or other charges assessed against Landlord for violations by Tenant of any owners' association rule or restrictive covenant, and any resulting administrative fees assessed by Landlord's agents or any other entity as provided by law.

C. Prohibitions: Unless otherwise authorized by this lease, Tenant may not install or permit any of the following on the Property, even temporarily: a spa, hot tub, above-ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums. Tenant may not permit any part of the Property to be used for: (1) any activity which is a nuisance, offensive, noisy, or dangerous; (2) the repair of any vehicle; (3) any business of any type, including but not limited to child care; (4) any activity which violates any zoning ordinance, owners' association rule, or restrictive covenant; (5) any illegal or unlawful activity, including but not limited to, the planting, growth, consumption, or distribution of cannabis plants or products; or (6) activity that obstructs, interferes with, or infringes on the rights of other persons near the Property. Tenant may not list any part of the Property on any lodging or short-term rental website or with any person or service that advertises Properties for rent.

D. Guests: Tenant may not permit any guest to stay on the Property longer than 7 consecutive days without Landlord's written permission or the amount of time permitted by any owners' association rule or restrictive covenant, whichever is less. No guests are permitted to stay on the Property more than twice the number of days in the blank above in any 30-day period. If the above blank is not filled in, two (2) days total per month will apply.

E. Common Areas: Landlord is not obligated to pay any non-mandatory or user fees for Tenant's use of any common areas or facilities (for example, pool or tennis courts).

**10. PARKING RULES:** Tenant may not permit more than 2 vehicles, including but not limited to automobiles, trucks, recreational vehicles, trailers, motorcycles, all-terrain vehicles, jet skis, and boats, on the Property unless authorized by Landlord in writing. Tenant may not park or permit any person to park any vehicles in the yard. Tenant may permit vehicles to be parked only in drives, garages, designated common parking areas, or in the street if not prohibited by law or an owners' association. Tenant may not store or permit any person to store any vehicles on or adjacent to the Property or on the street in front of the Property. In accordance with applicable state and local laws, Landlord may have towed, at Tenant's expense: (a) any inoperative vehicle on or adjacent to the Property; (b) any vehicle parked in violation of this paragraph or any additional parking rules made part of this lease; or (c) any vehicle parked in violation of any law, local ordinance, or owners' association rule. Tenant must promptly inform Landlord of any changes in Tenant's vehicle information (type, year, make, model, and license plate number including state) not later than 5 days after a change.

**11. ACCESS BY LANDLORD:**

A. Advertising: Landlord may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Property during the term of this lease or any renewal period. Landlord or Landlord's contractor may take interior or exterior photographs or images of the Property and use the photographs or images in any advertisements to lease or sell the Property.

B. Access: Before accessing the Property, Landlord or anyone authorized by Landlord will attempt to first contact Tenant, but may enter the Property at reasonable times without notice to make repairs or to show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally, Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact Tenant and without notice to: (1) survey or review the Property's condition and take photographs to document the condition; (2) make emergency repairs; (3) exercise a contractual or statutory lien; (4) leave written notices; or (5) seize nonexempt property if Tenant is in default.

C. Trip Charges: If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are denied or are not able to access the Property because of Tenant's failure to make the Property accessible (including, but not limited to, any occupant, guest or invitee of Tenant, animal, or security device prohibiting access to any area of the Property), Landlord may charge Tenant a trip charge of $100.00.

D. Keybox: **A keybox is a locked container placed on the Property holding a key to the Property. The keybox is opened by a special combination, key, or programmed access device so that persons with the access device may enter the Property, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

(1) Tenant authorizes Landlord, Landlord's property manager, and Landlord's broker to place on the Property a keybox containing a key to the Property:
   (a) during the last 45 days of this lease or any renewal or extension; and
   (b) at any time Landlord lists the Property for sale with a Texas licensed broker.

(2) Tenant may withdraw Tenant's authorization to place a keybox on the Property by providing written notice to Landlord and paying Landlord a fee of $2,500.00 as consideration for the withdrawal. Landlord will remove the keybox within a reasonable time after receipt of the notice of withdrawal and payment of the required fee. Removal of the keybox does not alleviate Tenant's obligation to make the Property available for showings as indicated in Paragraph 11B.

(3) If Landlord or Landlord's agents are denied or are not able to access the Property after first attempting to contact Tenant, Landlord may charge Tenant a trip charge as provided in Paragraph 11C.

(4) Landlord, the property manager, and Landlord's broker are not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses arising from use of the keybox unless caused by Landlord, the property manager, or Landlord's broker.

**12. MOVE-IN CONDITION:**

A. **SIGHT UNSEEN NOTICE: Tenant is given the opportunity to inspect the Property prior to signing the lease. A Tenant who declines to do so and chooses to sign the Lease on the Property sight unseen does so at their own risk. Tenant accepts the Property "as is" and Landlord is under no obligation to make any changes upon Tenant viewing the Property. Tenant will be bound to all provisions of the Lease irrespective of Tenant viewing the Property before signing the Lease.**

B. Landlord makes no express or implied warranties as to the Property's condition. Tenant has inspected the Property and accepts it **AS-IS** provided that Landlord: Tenant has landlord's permission to paint the downstairs green bedroom upon move-in. Before move-out, tenant must paint back the room to "Agreeable Gray". Tenant must get landlord approval of plan for new gate in driveway before any contractor starts work.

C. Tenant will complete an Inventory and Condition Form, noting any damages to the Property, and deliver it to Landlord within 7 days after the Commencement Date. If Tenant fails to timely deliver the Inventory and Condition Form, the Property will be deemed to be free of damages, unless otherwise expressed in this lease. The Inventory and Condition Form is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 15.

**13. MOVE-OUT:**

A. Move-Out Condition: When this lease ends, Tenant will surrender the Property in a clean condition free of all trash, debris, and any personal property. Tenant may not abandon the Property.

B. Definitions:

(1) "*Surrender*" occurs when all occupants have vacated the Property, in Landlord's reasonable judgment, and one of the following events occurs:
(a) the date Tenant specifies as the move-out or termination date in a written notice to Landlord has passed; or
(b) Tenant returns keys and access devices that Landlord provided to Tenant under this lease.

(2) "*Abandonment*" occurs when all of the following occur:
(a) all occupants have vacated the Property, in Landlord's reasonable judgment;
(b) Tenant is in breach of this lease by not timely paying rent; and
(c) Landlord has delivered written notice to Tenant, by affixing it to the inside of the main entry door or if the Landlord is prevented from entering the Property by affixing it to the outside of the main entry door, stating that Landlord considers the Property abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than 2 days from the date the notice is affixed to the main entry door.

C. Personal Property Left After Move-Out:

(1) If Tenant leaves any personal property in the Property after surrendering or abandoning the Property Landlord may:
(a) dispose of such personal property in the trash or a landfill;
(b) give such personal property to a charitable organization; or
(c) store and sell such personal property by following procedures in §54.045(b)-(e), Texas Property Code.

(2) Tenant must reimburse Landlord all Landlord's reasonable costs under Paragraph 13C(1) for packing, removing, storing and selling the personal property left in the Property after surrender or abandonment.

## 14. PROPERTY MAINTENANCE:

A. Tenant's General Responsibilities: Tenant, at Tenant's expense, must:

(1) keep the Property clean and sanitary;
(2) promptly dispose of all garbage in appropriate receptacles;
(3) supply and change heating and air conditioning filters per manufacturer's instructions;
(4) supply and replace all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage door openers, ceiling fan remotes, and other devices (of the same type and quality that are in the Property on the Commencement Date);
(5) maintain appropriate levels of necessary chemicals or matter in any water softener;
(6) take action to promptly eliminate any dangerous condition on the Property;
(7) take all necessary precautions to prevent broken water pipes due to freezing or other causes;
(8) replace any lost or misplaced keys;
(9) pay any periodic, preventive, or additional extermination costs desired by Tenant, including treatment for bed bugs, unless otherwise required by law;
(10) remove any standing water;
(11) know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage;
(12) water the foundation of the Property at reasonable and appropriate times;
(13) supply and change water filtration systems, including but not limited to, refrigerator water filters, water softeners; and
(14) promptly notify Landlord, in writing, of all needed repairs.

B. Yard Maintenance:

(1) *"Yard"* means all lawns, shrubbery, bushes, flowers, gardens, trees, rock or other landscaping, and other foliage on or encroaching on the Property or on any easement appurtenant to the Property, and does not include areas maintained by an owners' association.

(2) *"Maintain the Yard"* means to perform activities such as, but not limited to: (a) mowing, fertilizing, and trimming the Yard; (b) controlling pests and weeds in the Yard; and (c) removing debris from the Yard. (*excludes tree trimming unless agreed to in writing*)

(3) Unless prohibited by ordinance or other law, Tenant will water the Yard at reasonable and appropriate times including but not limited to the following times: 2x a week during the Spring and Summer months making sure to follow any City of Denton water restrictions.

(4) Other than watering, the Yard will be maintained as follows: *(select one)*

☐ (a) Landlord, at Landlord's expense, will maintain the Yard. Tenant will permit Landlord and Landlord's contractors reasonable access to the Yard and will remove any animal from the Yard at appropriate times.
☑ (b) Tenant, at Tenant's expense, will maintain the Yard.
☐ (c) Tenant will maintain in effect a scheduled yard maintenance contract with: ☐ a contractor who regularly provides such service; ☐ ______________________.

C. Pool/Spa Maintenance: Any pool or spa on the Property will be maintained according to a Pool/Spa Maintenance Addendum.

D. Prohibitions: If Tenant installs any fixtures on the Property, authorized or unauthorized, such as additional smoke alarms, additional carbon monoxide detectors, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of the Landlord. Except as otherwise permitted by law, this lease, or in writing by Landlord, Tenant may not:
(1) remove any part of the Property or any of Landlord's personal property from the Property;
(2) remove, change, add, or rekey any lock;
(3) make holes in the woodwork, floors, or walls, except a reasonable number of small nails;
(4) permit any water furniture on the Property;
(5) install additional phone or video cables, outlets, antennas, satellite receivers, or alarm systems;
(6) alter, replace or remove flooring material, paint, or wallpaper;
(7) install, change, or remove any: fixture, appliance, or non-real-property item listed in Paragraph 2;
(8) keep or permit any hazardous material on the Property such as flammable or explosive materials;
(9) keep or permit any material or item which causes any liability or fire and extended insurance coverage to be suspended or canceled or any premiums to be increased;
(10) dispose of any environmentally detrimental substance (for example, motor oil or radiator fluid) on the Property;
(11) cause or allow any lien to be filed against any portion of the Property; or
(12) disconnect or intentionally damage any carbon monoxide detector, or otherwise violate any local ordinance requiring a carbon monoxide detector in the Property.

E. Failure to Maintain: If Tenant fails to comply with this Paragraph 14 or any Pool/Spa Maintenance Addendum, Landlord may, in addition to exercising Landlord's remedies under Paragraph 24, perform whatever action Tenant is obligated to perform and Tenant must immediately reimburse Landlord the reasonable expenses that Landlord incurs plus any administrative fees assessed by Landlord's agents or any other entity as provided by law.

F. Smoking: Smoking, including vaping or tobacco pipes of any type, by Tenant, Tenant's guests, family, or occupants is ☐ permitted ☑ not permitted on the Property (including, but not limited to, the garage or outdoor areas of the Property). If smoking is not permitted and does occur on the Property, Tenant will be in default and:
(1) Landlord may exercise Landlord's remedies under Paragraph 24; and
(2) Landlord may deduct from the security deposit damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

**15. REPAIRS:**

***(Notice: Subchapter B, Chapter 92, Texas Property Code governs repair obligations).***

A. **Repair Requests: All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair. In the event of an emergency related to the condition of the Property that materially affects the physical health or safety of an ordinary tenant, Tenant may call Landlord or, if applicable, the property manager, at** 940.597.8777 **. Ordinarily, a repair to the heating and air conditioning system is not an emergency, unless otherwise required by local ordinance.**

B. **NOTICE: If Landlord fails to repair a condition that materially affects the physical health or safety of an ordinary tenant as required by this lease or the Texas Property Code, Tenant may be entitled to exercise remedies under §92.056 and §92.0561 of the Texas Property Code. If Tenant follows the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections. The Texas Property Code presumes that 7 days is a**

reasonable period of time for the Landlord to make a diligent effort to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities). Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the lease.

**C. Completion of Repairs:**

**(1) Tenant may not repair or cause to be repaired any condition, regardless of the cause, without Landlord's permission. All decisions regarding repairs, including the completion of any repair, whether to repair or replace the item, and the selection of contractors, will be at Landlord's sole discretion.**

**(2) Landlord is not obligated to complete a repair on a day other than a business day unless required to do so by the Texas Property Code.**

**D. Payment of Repair Costs:**

**(1) Except as otherwise specified in this lease, Landlord will pay to repair or remedy conditions in the Property in need of repair if Tenant complies with the procedures for requesting repairs as described in this Paragraph 15. This includes, but is not limited to, repairs to the following items not caused by Tenant or Tenant's negligence:**
**(a) heating and air conditioning systems;**
**(b) water heaters; or**
**(c) water penetration from structural defects.**

**(2) Except for those conditions caused by the negligence of Landlord, Tenant will pay to repair the following conditions:**
**(a) conditions caused by Tenant, an Occupant, or any guest or invitee of Tenant;**
**(b) damage to doors, windows, and screens;**
**(c) damage from windows or doors left open;**
**(d) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the Property;**
**(e) items that are cosmetic in nature with no impact on the functionality or use of the item; and**
**(f) the following specific items or appliances:** Washer and Dryer

**E. Trip Charges: If a repair person is unable to access the Property after making arrangements with Tenant to complete the repair, Tenant will pay any trip charge the repair person may charge, which amount may be different from the amount stated in Paragraph 11C.**

**F. Advance Payments and Reimbursements: Landlord may require advance payment of repairs or payments under this Paragraph 15 for which Tenant is responsible. Tenant must promptly reimburse Landlord the amounts under this Paragraph 15 for which Tenant is responsible.**

## 16. SECURITY DEVICES AND EXTERIOR DOOR LOCKS:

A. Subchapter D, Chapter 92, Texas Property Code requires the Property to be equipped with certain types of locks and security devices, including (with some exceptions): (1) window latches on each window; (2) a keyed doorknob lock or keyed deadbolt lock on each exterior door; (3) a sliding door pin lock on each exterior sliding glass door of the dwelling; (4) a sliding door handle latch or a sliding door security bar on each exterior sliding glass door of the dwelling; and (5) a keyless bolting device and a door viewer on each exterior door of the dwelling. Landlord has rekeyed the security devices since the last occupant

vacated the Property or will rekey the security devices within 7 days after Tenant moves in. "Security device" has the meaning assigned to that term in §92.151, Texas Property Code.

B. All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant may be paid by Tenant in advance in accordance with §92.162(c), Texas Property Code, and may be installed only by contractors authorized by Landlord.

C. If Tenant vacates the Property in breach of this lease, Landlord may deduct from the Security Deposit reasonable costs incurred by Landlord to rekey security devices as authorized by §92.156(e), Texas Property Code.

17. **SMOKE ALARMS:** Subchapter F, Chapter 92, Texas Property Code, requires the Property to be equipped with smoke alarms in certain locations. Requests for additional installation, inspection, or repair of smoke alarms must be in writing. Disconnecting or intentionally damaging a smoke alarm or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages and attorney fees under §92.2611, Texas Property Code.

18. **LIABILITY**: Unless caused by Landlord, Landlord is not responsible to Tenant, Tenant's guests, family, or Occupants for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (for example, carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. Unless prohibited by law, Tenant will promptly reimburse Landlord for any damages, injuries, or losses to person or property caused by Tenant, Tenant's guests, any occupants, or any animals, including cost of repairs or service to the Property.

19. **HOLDOVER**: If Tenant fails to vacate the Property at the time this lease ends Tenant will pay Landlord rent for the holdover period and indemnify Landlord and prospective tenants for damages, including but not limited to lost rent, lodging expenses, costs of eviction, and attorneys' fees. Rent for any holdover period will be three (3) times the monthly rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

20. **RESIDENTIAL LANDLORD'S LIEN**: Landlord will have a lien for unpaid rent against all of Tenant's nonexempt personal property that is in the Property and may seize such nonexempt property if Tenant fails to pay rent. Subchapter C, Chapter 54, Texas Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord may collect a charge for packing, removing, or storing property seized in addition to any other amounts Landlord is entitled to receive. Landlord may sell or dispose of any seized property in accordance with the provisions of §54.045, Texas Property Code.

21. **SUBORDINATION**: This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to: (i) any lien or encumbrance now or later placed on the Property by Landlord; (ii) all advances made under any such lien or encumbrance; (iii) the interest payable on any such lien or encumbrance; (iv) any and all renewals and extensions of any such lien or encumbrance; (v) any restrictive covenant; and (vi) the rights of any owners' association affecting the Property. Under the Federal Protecting Tenants at Foreclosure Act (PTFA), generally, tenants of foreclosed properties have the right to remain in the property for at least 90 days after foreclosure and may have the right to stay longer. In order for any protection to apply, you must be a tenant in good standing, current on rent and any late fees. For more information on the provisions contained in the Protecting Tenants at Foreclosure Act you may visit http://nlihc.org/library/foreclosure.

**22. CASUALTY LOSS OR CONDEMNATION:** §92.054, Texas Property Code governs the rights and obligations of the parties regarding a casualty loss to the Property. Any proceeds, payment for damages, settlements, awards, or other sums paid because of a casualty loss to the Property will be Landlord's sole property. For the purpose of this lease, any condemnation of all or a part of the Property is a casualty loss.

**23. SPECIAL PROVISIONS:** *(Do not insert a lease-option or lease-purchase clause without the assistance of legal counsel. Special obligations and liabilities under statute apply to such transactions.)*
Tenant to change air filters every 6 months during term of lease.

**24. DEFAULT:**

A. If Landlord fails to comply with this lease, Tenant may seek any relief provided by law.

B. If Tenant fails to timely pay all amounts due under this lease or otherwise fails to comply with this lease, Tenant will be in default and:
(1) Landlord may terminate Tenant's right to occupy the Property by providing Tenant with at least one day written notice to vacate or notice to pay or vacate, as applicable per §24.005, Texas Property Code.
(2) all unpaid rents which are payable during the remainder of this lease or any renewal period will be accelerated without notice or demand;
(3) Landlord may exercise Landlord's lien under Paragraph 20 and any other rights under this lease or the Property Code;
(4) all unpaid amounts, including judgments, will bear 18% interest or the maximum amount allowed by law per year from the due date, compounded annually; and
(5) Tenant will be liable for:
(a) any lost rent;
(b) Landlord's cost of reletting the Property including but not limited to leasing fees, advertising fees, utility charges, and other fees reasonably necessary to relet the Property;
(c) repairs to the Property for use beyond normal wear and tear;
(d) all Landlord's costs associated with eviction of Tenant, including but not limited to attorney's fees, court costs, costs of service, witness fees, and prejudgment interest;
(e) all Landlord's costs associated with collection of amounts due under this lease, including but not limited to collection fees, late charges, and returned check charges; and
(f) any other recovery to which Landlord may be entitled by law.

C. Notice under Paragraph 24B(1) may be by any means permitted by §24.005, Texas Property Code.

D. If Tenant vacates the Property in breach of this lease, Landlord may also deduct from the Security Deposit the reasonable costs to rekey certain security devices, as provided in Paragraph 16.

E. Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by attempting to relet the Property to acceptable tenants and reducing Tenant's liability accordingly.

**25. EARLY TERMINATION:** This lease begins on the Commencement Date and ends on the Expiration date unless: (i) renewed under Paragraph 5; (ii) extended by written agreement of the parties; or (iii) terminated earlier under Paragraph 24, by agreement of the parties (see *Early Termination of Residential Lease TXR 2012*), applicable law, or this Paragraph 25. Unless otherwise provided by law, Tenant is not entitled to early termination due to voluntary or involuntary job or school transfer, changes in marital status, loss of employment, loss of co-tenants, changes in health, purchase of property, or death.

A. Special Statutory Rights: Tenants may have special statutory rights to terminate the lease early in certain situations involving family violence, military deployment or transfer, or certain sex offenses or stalking.

(1) Military: If Tenant is or becomes a servicemember or a dependent of a servicemember, Tenant may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days. Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered. §92.017, Texas Property Code governs the rights and obligations of the parties under this paragraph.

(2) Family Violence: Tenant may terminate this lease if Tenant provides Landlord with a copy of documentation described under §92.016, Texas Property Code protecting Tenant or an occupant from family violence committed by a cotenant or occupant of the Property. §92.016, Texas Property Code governs the rights and obligations of the parties under this paragraph. If the family violence is committed by someone other than a cotenant or co-occupant of the Property, Tenant must give written notice of termination 30 days prior to the effective date of the notice.

(3) Sex Offenses or Stalking: Tenant may have special statutory rights to terminate this lease in certain situations involving certain sexual offenses or stalking, if the Tenant provides Landlord with the documentation required by §92.0161, Texas Property Code. For more information about the types of situations covered by this provision, Tenant is advised to review §92.0161, Texas Property Code.

B. Replacement Tenants:

(1) Tenant may not assign this lease or sublet the Property without Landlord's written consent.

(2) If Tenant requests an early termination of this lease under this Paragraph 24B, Tenant may attempt to find a replacement tenant and may request Landlord to do the same. Landlord may, but is not obligated to, attempt to find a replacement tenant under this paragraph.

(3) Any replacement tenant must, in Landlord's discretion, be acceptable as a tenant and must sign a new lease with terms not less favorable to Landlord than this Lease or otherwise acceptable to Landlord.

(4) At the time Landlord agrees to permit a replacement tenant to occupy the Property, Tenant will pay Landlord:
(a) if Tenant procures the replacement tenant:
☐ (i) $____________________.
☐ (ii) _________% of one month's rent that the replacement tenant is to pay.
(b) if Landlord procures the replacement tenant:
☐ (i) $____________________.
☐ (ii) _________% of one month's rent that the replacement tenant is to pay.

26. **ATTORNEY'S FEES**: Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, attorney's fees, costs of service, and all other costs of the legal proceeding from the non-prevailing party.

27. **REPRESENTATIONS**: Tenant's statements in this lease and any application for rental are material representations. Each party to this lease represents that he or she is of legal age to enter into a contract. If Tenant makes a misrepresentation in this lease or in an application for rental, Tenant is in default.

**28. ADDENDA:** Incorporated into this lease are the following addenda, exhibits and other information. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at Landlord's discretion, amend from time to time.

- ☐ *Addendum Regarding Rental Flood Disclosure TXR 2015*
- ☐ *Addendum Regarding Lead-Based Paint TXR 2008*
- ☐ *Inventory & Condition Form TXR 2207*
- ☐ *Pool/Spa Maintenance Addendum TXR 2010*
- ☑ *Animal Agreement TXR 2004*
- ☐ ______
- ☐ ______
- ☐ ______
- ☐ *Agreement Between Brokers TXR 2002*
- ☐ *Bed Bug Addendum TXR 2013*
- ☐ *Residential Lease Application TXR 2003*
- ☐ *Residential Lease Guaranty TXR 2007*
- ☐ *Mold Remediation Consumer Protection TXR 2507*
- ☐ ______
- ☐ ______
- ☐ ______

**29. NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, and/or sent by electronic transmission to: (*if you insert an email address, you are consenting to receive notices via email*)

| Tenant at: | Landlord at: |
|---|---|
| E-mail jessicamescue@gmail.com | E-mail stephenharcus@gmail.com |
| Jessica Escue | Stephen Harcus |

**30. AGREEMENT OF PARTIES:**

A. Entire Agreement: There are no oral agreements between Landlord and Tenant. This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. Binding Effect: This lease is binding upon and inures to the benefit of the parties to this lease and their respective heirs, executors, administrators, successors, and permitted assigns.

C. Joint and Several: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its extension, its renewal, or its termination is binding on all Tenants executing this lease.

D. Waiver: Landlord's past delay, waiver, or non-enforcement of a rental due date or any other right will not be deemed to be a waiver of any other breach by Tenant or any other right in this lease.

E. Severable Clauses: Should a court find any clause in this lease unenforceable, the remainder of this lease will not be affected and all other provisions in this lease will remain enforceable.

F. Controlling Law: The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this lease.

G. Copyright: If an active REALTOR® member of Texas REALTORS® does not negotiate this lease as a party or for one of the parties, with or without assistance by an active member of the State Bar of Texas, this lease is voidable at will by Tenant.

**31. INFORMATION:**

A. Future inquiries about this lease, rental payments, and security deposits should be directed to the person listed for receipt of notices for Landlord under Paragraph 29.

B. It is Tenant's responsibility to determine, before signing this lease, if: (i) all services (e.g., utilities, connections, schools, and transportation) are accessible to or from the Property; (ii) such services are sufficient for Tenant's needs and wishes; and (iii) Tenant is satisfied with the Property's condition.

C. The brokers to this lease have no knowledge of whether Landlord is delinquent in the payment of any lien against the Property.

D. Unpaid rent and any unpaid amount under this lease are reportable to credit reporting agencies.

E. Landlord is not obligated to respond to any requests for Tenant's rental and payment history from a mortgage company or other prospective landlord until Tenant has given notice of termination of this lease and Tenant is not in breach of this lease. (*Notice: Landlord or Landlord's agent may charge a reasonable fee for processing such information.)*

F. If all Tenants/Occupants over 18 years of age die during this lease, Landlord may: (i) permit the person named below to access the Property at reasonable times in Landlord's or Landlord's agent's presence; (ii) permit the named person to remove Tenant's personal property; and (iii) refund the security deposit, less deductions, to the named person. §92.014, Property Code governs procedures to follow regarding a deceased tenant's personal property and security deposit. ***(Do not insert Tenant or Occupant names below.)***

Name: Joe Escue Phone: 256.225.0998
Address: 3789 Showshill Drive, Birmingham, AL 35242
E-mail: joetescue@gmail.com

G. If a Tenant who is the sole occupant of the Property dies before the expiration of the Tenant's lease, a representative of the estate or the person named in Paragraph 31(F) may terminate the Tenant's rights and obligations under the lease if the representative or the person named in Paragraph 31(F) provides to the Landlord written notice of the termination of the lease as required by §92.0162, Texas Property Code and the deceased Tenant's property is removed from the leased premises in accordance with §92.014 of the Property Code and the representative or the person named in Paragraph 31(F) signs an inventory of the removed property if required by the Landlord. Termination of a lease is effective on the later of:

(1) the 30th day after the date on which the notice under Section 92.0162, Texas Property Code was provided; or
(2) the date on which all of the conditions under Section 92.0162, Property Code have been met.

H. The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain areas (see www.txdps.state.tx.us under on-line services). For information concerning past criminal activity in certain areas, contact the local police department.

I. Landlord's insurance does not cover Tenant from loss of personal property. Landlord ☑ does or ☐ does not require that Tenant obtain and maintain liability insurance of not less than $100,000.00.

J. Landlord's broker, Monument Realty
☐ will ☑ will not act as the Property Manager for landlord. If Property is not managed by above-named broker, Property will be managed by ☑ Landlord or ☐ Property Manager for Landlord:

Name of Property Manager: ______ Phone: ______
Address: ______ E-mail: ______

K. This lease should not be used in conjunction with executory contracts of any type, such as contracts for deed, leases with options to purchase, or lease options, without the advice of an attorney.

L. **This lease is negotiable between the parties. This lease is binding upon final acceptance. READ IT CAREFULLY. If you do not understand the effect of this lease, consult your attorney BEFORE signing.**

| | |
|---|---|
| Stephen Harcus (dotloop verified 02/15/26 5:30 PM CST WQXC-NPGS-18FS-QVUO) | Jessica Escue (dotloop verified 02/17/26 3:20 PM CST USFN-BKIL-YFVI-TZ0I) |
| Landlord Date | Tenant Date |
| | |
| Landlord Date | Tenant Date |
| **Or signed for Landlord under written property management agreement or power of attorney:** | Tenant Date |
| By: Date | Tenant Date |

Abby Bennett
Broker's Associate's Printed Name

Monument Realty 9006556
Broker's Printed Name License No.

Firm Name

*For Landlord's Use:*

On ______________* (*date*), Landlord provided a copy of the lease, signed by all parties, to ______________(Tenant) by ☐mail ☐e-mail ☐in person.

**Note:* *Landlord must provide at least one copy of the lease to at least one Tenant* ***no later than three business days*** *after the date the lease is signed by each party to the lease. Additionally, if more than one tenant is a party to the lease, no later than three business days after the date the Landlord receives a written request for a copy of a lease from a tenant who has not already received one as required above, the Landlord must provide a copy to the requesting tenant. Landlord may provide the copy of the lease in: (1) a paper format; (2) an electronic format if requested by the tenant; or (3) by e-mail if the parties have communicated by e-mail regarding the lease. See § 92.024, Texas Property Code, for more details.*

TEXAS REALTORS

# ANIMAL AGREEMENT

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2026

**ADDENDUM TO RESIDENTIAL LEASE CONCERNING THE PROPERTY AT** 1929 N Lake Trail, Denton, TX 76201

## A. ANIMAL AUTHORIZATION AND DESCRIPTION:

(1) An assistance animal is required to be reported to the Landlord with accompanying documentation. A request for a reasonable accommodation must be made in order to keep the assistance animal on the Property and such a request may require a documented need for the assistance animal. If the request for reasonable accommodation is accepted by the Landlord, no animal fee or deposit will be charged.

**Misrepresentation of an assistance animal is a violation of Texas law and may be a punishable offense.**

(2) Tenant may not permit, even temporarily, any animal on the Property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect) other than an assistance animal, unless specifically authorized by this agreement.

(3) Tenant may keep only the following animal(s) on the Property until the above-referenced lease ends.

Type: Dog Breed: Boxer/Lab Mix Name: Stella
Color: Brown/White Weight: 75lbs Age: 7 Gender: Female
Spayed/Neutered? ☑ yes ☐ no Rabies Shots Current? ☑ yes ☐ no Assistance Animal? ☑ yes ☐ no

Type: Dog Breed: Bichon/Pyrenees Mix Name: Mishka
Color: Blonde Weight: 45lbs Age: 13 Gender: Female
Spayed/Neutered? ☑ yes ☐ no Rabies Shots Current? ☑ yes ☐ no Assistance Animal? ☑ yes ☐ no

Type: Dog Breed: Australian Cattle Dog Mix Name: Zen
Color: Black/White Weight: 60lbs Age: 3 Gender: Male
Spayed/Neutered? ☑ yes ☐ no Rabies Shots Current? ☑ yes ☐ no Assistance Animal? ☑ yes ☐ no

Type: Cat/Cat Breed: Main Coon/Dom Med Hair Name: Opal/Juno
Color: Black/Calico Weight: 10lbs/8lbs Age: 13/7 Gender: Male/Female
Spayed/Neutered? ☑ yes ☐ no Rabies Shots Current? ☑ yes ☐ no Assistance Animal? ☑ yes ☐ no

*-Page intentionally left blank-*

**B. CONSIDERATION:** This Paragraph does not apply to assistance animals. In consideration for Landlord's authorization for Tenant to keep the animal(s) described in Paragraph A(3) on the Property, the Parties agree to the following. *(Check any one or any combination of the following.)*

☐ (1) Tenant will pay an animal deposit of $____________ on or before ________________. The animal deposit is an increase in the security deposit in the lease and is made part of the Security Deposit for all purposes. This increase in the security deposit is not refundable before the lease ends, even if the animal is removed. Any refund of the Security Deposit, including this increase, is governed by the terms of the lease.

☐ (2) Tenant will pay a monthly animal fee in the amount of $__________ which is due concurrently with rent payment as referenced in Paragraphs 3 and 4 of the lease (Paragraph 5A for all leases dated on or before January 4, 2026).

☐ (3) Tenant will pay a one-time, non-refundable animal fee of $_________ on or before ____________.

**C. ANIMAL RULES:** Tenant must:

(1) take all reasonable action to ensure that any animal does not violate the rights of other persons;
(2) comply with all applicable statutes, ordinances, restrictions, owners' association rules, and other enforceable regulations regarding any animal;
(3) keep the rabies shots of any animal current;
(4) confine any animal, when outside, by fences or on leashes under Tenant's control;
(5) confine any animal, that is not an assistance animal, in an appropriate enclosure for the type of animal;
(6) promptly remove any animal waste from the Property, including all living areas, garages, storage areas, yards, porches, patios, courtyards, and decks; and
(7) promptly remove from the Property any offspring of any animal.

**D. ACCESS:** Tenant must remove or confine any animal at any time that the animal is likely to limit or prohibit Landlord or other persons access to Property in its entirety as permitted by the lease.

**E. DISCLOSURE CONCERNING ANIMALS:**

(1) Is Tenant aware of whether any of the animals described under this addendum has ever bitten or injured another person? ☐ Yes ☑ No
If yes, explain: ____________________

(2) Is Tenant aware of whether any of the animals described under this addendum has any propensity or predisposition to bite or injure someone? ☐ Yes ☑ No
If yes, explain: ____________________

**F. TENANT'S LIABILITY:**

(1) Tenant is responsible and liable for:
(a) any damage to the Property or any item in the Property caused by any animal;
(b) any personal injuries to any person caused by any animal; and
(c) any damage to any person's property caused by any animal.
(2) Tenant will pay all reasonable costs that are necessary to clean, deodorize, deflea, or repair any part of the Property, including but not limited to the flooring, doors, walls, window coverings, furniture, appliances, sod, yard, fences, or landscaping.

**G. INDEMNIFICATION:** Tenant will protect, defend, indemnify, and hold Landlord, Landlord's property manager, and Landlord's agents harmless from any damages, costs, attorney's fees, and expenses that are caused by the act of any animal or Tenant.

**H. DEFAULT:** If Tenant breaches any provision in this Animal Agreement, Landlord may, in addition to all remedies described under Paragraph 6B of the lease (Paragraph 9B for all leases dated on or before January 4, 2026), immediately terminate authorization for Tenant to keep any animal on the Property. Upon such termination, Tenant must immediately remove any such animal from the Property.

**I. SPECIAL PROVISIONS:**
A one-time refundable deposit of $500 will be due upon move-in for any other animals, birds, or reptiles that will be added to the home during the term of the lease due to rehabilitation.

| | |
|---|---|
| Stephen Harcus (dotloop verified 02/18/26 12:29 PM CST DT7Y-0RKH-YYZI-ANOY) | Jessica Escue (dotloop verified 02/18/26 1:06 PM CST GM88-OMWW-JINI-MYQA) |
| Landlord Date | Tenant Date |
| | |
| Landlord Date | Tenant Date |
| **Or signed for Landlord under written property management agreement or power of attorney:** | |
| | Tenant Date |
| By: | |
| | Tenant Date |

Printed Name: ______________________

Firm Name: ______________________

# ADDENDUM REGARDING RENTAL FLOOD DISCLOSURE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2025.

**ADDENDUM TO RESIDENTIAL LEASE CONCERNING THE PROPERTY AT** 1929 N Lake Trail, Denton, TX 76201

**THIS ADDENDUM IS A DISCLOSURE OF LANDLORDS' KNOWLEDGE AS OF THE DATE SIGNED BY THE LANDLORD. IT IS NOT A WARRANTY OF ANY KIND NOR A PREDICTION OF FUTURE EVENTS BY LANDLORD, LANDLORD'S AGENTS, OR ANY OTHER AGENT.**

**A. 100-YEAR FLOODPLAIN.**

Landlord ☐ is or ☑ is not aware that the dwelling you are renting is located in a 100-year floodplain. If neither box is checked, you should assume the dwelling is in a 100-year floodplain. Even if the dwelling is not in a 100-year floodplain, the dwelling may still be susceptible to flooding. The Federal Emergency Management Agency (FEMA) maintains a flood map on its Internet website that is searchable by address, at no cost, to determine if a dwelling is located in a flood hazard area. Most tenant insurance policies do not cover damages or loss incurred in a flood. You should seek insurance coverage that would cover losses caused by a flood.

**B. DAMAGE TO A DWELLING DUE TO FLOODING DURING THE LAST FIVE-YEAR PERIOD.**

Landlord ☐ is or ☑ is not aware that the dwelling you are renting has flooded at least once within the last five years.

**For purposes of this notice:*

*"100-year floodplain" means any area of land designated as a flood hazard area with a one percent or greater chance of flooding each year by the Federal Emergency Management Agency under the National Flood Insurance Act of 1968 (42 U.S.C. Section 4001 et seq.). A landlord is not required to disclose on the notice that the landlord is aware that a dwelling is located in a 100-year floodplain if the elevation of the dwelling is raised above the 100-year floodplain flood levels in accordance with federal regulations.*

*"Flooding" means a general or temporary condition of partial or complete inundation of a dwelling caused by: (A) the overflow of inland or tidal waters; (B) the unusual and rapid accumulation of runoff or surface waters from any established water source such as a river,*
*stream, or drainage ditch; or (C) excessive rainfall.*

The undersigned Tenant acknowledges receipt of the foregoing notice.

| | |
|---|---|
| Stephen Harcus — dotloop verified 02/18/26 1:22 PM CST BZZZ-BESP-NKFR-MBGZ | Jessica Escue — dotloop verified 02/18/26 1:21 PM CST 8UNV-H5KC-4UXX-WEXQ |
| Landlord Date | Tenant Date |
| Landlord Date | Tenant Date |
| | Tenant Date |
| | Tenant Date |

TEXAS REALTORS

# REPRESENTATION DISCLOSURE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2024

**CONCERNING THE PROPERTY AT:** 1929 North Lake Trail, Denton, TX 76201

Broker/Broker Firm Name: Monument Realty License No.: 9006556

Broker's Associate's Name: Abby Bennett License No.: 0717307

A. Texas law (Section 1101.558, Occupations Code) requires a real estate license holder who represents a party in a proposed real estate transaction to disclose, orally or in writing, that representation at the license holder's first contact with:

(1) another party to the transaction; or
(2) another license holder who represents another party to the transaction.

B. Broker represents the following party:

☐ Seller: ______.
☑ Landlord: Stephen Harcus.
☐ Buyer: ______.
☐ Tenant: ______.

C. A real estate license holder, while acting as an agent, is a fiduciary. The primary duty of the license holder is to represent the interests of their client. The license holder must treat other parties to a transaction honestly and fairly, however, the duty to their client is primary.

**Broker compensation or the sharing of compensation between brokers is not set by law nor fixed, controlled, recommended, or suggested by the Association of REALTORS®, MLS, or any listing service. Broker compensation is fully negotiable. Brokers independently determine their fees.**

**The undersigned persons acknowledge there is no agency relationship with Broker as of the date of this disclosure:**

Jessica Escue
Printed Name

*Jessica Escue* dotloop verified 02/23/26 12:48 PM CST STMB-YYMS-IXYS-UH5K
Signature Date

______
Printed Name

______
Signature Date

# EXHIBIT B

Tenant Payment Ledger through October 1, 2026

In re Jessica Escue, Case No. 26-43461 (Bankr. E.D. Tex.)

# TENANT PAYMENT LEDGER

1929 North Lake Trail, Denton, TX 76201 | Tenant: Jessica Escue | Lease term 2/22/2026 - 2/22/2027 | Monthly rent $2,500.00, due on the 1st
Statement date: 10/07/2026

**ce owed through 10/01/2026 (rent and charges): $12,540.95** | Security deposit held (refundable): $2,500.00 | Additional rescue pet deposit: $500.00

| Date | Period | Type | Description | Charge | Payment / Credit | Running Balance Owed | Source |
|---|---|---|---|---|---|---|---|
| 02/20/2026 | Feb 2026 | Charge | Prorated rent, 2/22-2/28 (invoice 1363591-1UYvW) | $623.00 | | $623.00 | Owner ledger (Baselane) |
| 02/20/2026 | Feb 2026 | Payment | Prorated rent paid | | $623.00 | $0.00 | Owner ledger (Baselane) |
| 02/26/2026 | Deposit | Deposit | Security deposit received by check (refundable) | | | $0.00 | Owner ledger (Baselane) |
| 02/26/2026 | Deposit | Deposit | Additional rescue pet deposit received by check | | | $0.00 | Owner ledger (Baselane) |
| 03/01/2026 | Mar 2026 | Charge | March rent (invoice 1363592-JvjwU) | $2,500.00 | | $2,500.00 | Lease; Owner ledger (Baselane) |
| 03/05/2026 | Mar 2026 | Payment | March rent received | | $2,500.00 | $0.00 | Baselane payment notice; Owner ledger (Baselane) |
| 04/01/2026 | Apr 2026 | Charge | April rent (invoice 1363593-fa9sf) | $2,500.00 | | $2,500.00 | Lease; Owner ledger (Baselane) |
| 04/07/2026 | Apr 2026 | Memo | April payment attempt of $2,500 (initiated 4/6) failed | | | $2,500.00 | Baselane payment notice |
| 05/01/2026 | May 2026 | Charge | May rent (invoice 1363594-fnX6k) | $2,500.00 | | $5,000.00 | Lease; Owner ledger (Baselane) |
| 05/03/2026 | Apr 2026 | Payment | April rent received (initiated 4/28) | | $2,500.00 | $2,500.00 | Baselane payment notice; Owner ledger (Baselane) |
| 05/03/2026 | May 2026 | Payment | May rent received (initiated 4/28) | | $2,500.00 | $0.00 | Baselane payment notice; Owner ledger (Baselane) |
| 06/01/2026 | Jun 2026 | Charge | June rent (invoice 1665903-h65gD) | $2,500.00 | | $2,500.00 | Lease; Owner ledger (Baselane) |
| 06/09/2026 | Jun 2026 | Payment | June rent received (initiated 6/2) | | $2,500.00 | $0.00 | Baselane payment notice |
| 07/01/2026 | Jul 2026 | Charge | July rent | $2,500.00 | | $2,500.00 | Property manager ledger (The Mardia Group, 9/14/2026) |
| 07/07/2026 | Jul 2026 | Memo | July eCheck returned unpaid | | | $2,500.00 | Property manager ledger (The Mardia Group, 9/14/2026) |
| 07/07/2026 | Jul 2026 | Charge | NSF charge, returned July eCheck | $30.00 | | $2,530.00 | Property manager ledger (The Mardia Group, 9/14/2026) |
| 07/07/2026 | Jul 2026 | Charge | Postage, certified mail notice to vacate | $10.95 | | $2,540.95 | Property manager ledger (The Mardia Group, 9/14/2026) |
| 07/13/2026 | Jun 2026 | Reversal | June payment reversed after tenant disputed the ACH payment; $2,500 returned to tenant | $2,500.00 | | $5,040.95 | Baselane payment notice; Property manager ledger (The Mardia Group, 9/14/2026) |
| 08/01/2026 | Aug 2026 | Charge | August rent | $2,500.00 | | $7,540.95 | Property manager ledger (The Mardia Group, 9/14/2026) |
| 09/01/2026 | Sep 2026 | Charge | September rent | $2,500.00 | | $10,040.95 | Property manager ledger (The Mardia Group, 9/14/2026) |
| 10/01/2026 | Oct 2026 | Charge | October rent | $2,500.00 | | $12,540.95 | Lease |
| | | | **TOTALS** | **$23,163.95** | **$10,623.00** | **$12,540.95** | |

d rows record payment attempts that did not complete; no funds were received.

# EXHIBIT C

Petition for Eviction, Justice Court, Precinct 5, Denton County, Texas
(filed September 14, 2026)

In re Jessica Escue, Case No. 26-43461 (Bankr. E.D. Tex.)

**Cause No. ____________________**

| | | |
|---|---|---|
| **STEPHEN HARCUS,**<br>***Plaintiff,*** | §<br>§<br>§ | **IN THE JUSTICE COURT** |
| **v.** | §<br>§ | **PRECINCT 5** |
| **JESSICA ESCUE, AND ALL OTHER OCCUPANTS,**<br>***Defendants.*** | §<br>§<br>§ | **DENTON COUNTY, TEXAS** |

**PLAINTIFF'S PETITION FOR EVICTION**

**NOW COMES** Plaintiff, **STEPHEN HARCUS** ("Plaintiff"), and alleges the following:

1. Plaintiff is the owner of the residential real property located at 1929 N. Lake Trail, Denton, Texas 76201 (the "Property"). Plaintiff's mailing address is c/o Mardia Group, LLC, P.O. Box 648, Rockwall, Texas 75087.

2. Defendant JESSICA ESCUE ("Defendant") is a Texas resident that may be served at 1929 N. Lake Trail, Denton, Texas 76201.

3. This is an action to evict a residential tenant from real property in Denton County, Texas.

4. Plaintiff is the sole owner of the Property the subject of this suit.

5. Defendant has possession of the Property pursuant to Lease Agreement dated on or about February 17, 2026 (the "Lease"). A true and correct copy of the Lease is attached hereto as **Exhibit A** and is fully incorporated herein by this reference.

6. Under the Lease Agreement, Defendant's monthly rent is $2,500.00.

7. Defendant has not paid the monthly rent for June, July, August, or September, 2026. The amount due and owing from Defendant for past due rent is $10,000.00. The amount due and owing from Defendant for all rent, late fees, and other lease-supported fines is $10,040.95. A true and correct copy of the Tenant's Ledger is

attached hereto as **Exhibit B** and is fully incorporated herein by this reference.

8. On or about September 8, 2026, Plaintiff provided Defendant with a three (3) day Notice to Pay or Vacate ("Notice"). A true and correct copy of the Notice is attached hereto as **Exhibit C** and is fully incorporated herein by this reference.

9. The Notice was sent by regular mail, certified mail, return receipt requested, and by email.

10. Defendant has not cured the amounts due and owing under the Lease.

11. Defendant did not vacate the Property by September 12, 2026.

12. Defendant has failed to vacate the Property.

13. Plaintiff will be seeking applicable attorney's fees. Attorney's name, address and phone and fax numbers is: Rebecca T. Vaughn, Lindauer & Vaughn, 117 S. Dallas Street, Ennis, Texas 75119, Phone: (972) 503-4033, Fax: (972) 503-4034. Plaintiff anticipates spending $2,500.00 in attorney's fees on this matter.

14. Plaintiff consents to the answer and other motions or pleadings to be sent via email to becca@joycelindauer.com.

15. As a result of investigation or personal knowledge, it is my belief that the above-named Defendant is not in the military service on active duty and is not a dependent of a service member on active duty.

**PRAYER**

Plaintiff prays that Defendant be served with citation and to answer the complaint, and upon final hearing, that Plaintiff receive a judgment against Defendant for possession of the premises located at 1929 N. Lake Trail, Denton, Texas 76201, including the removal of Defendant and Defendant's possessions from the premises, attorney's fees in the amount of $2,500.00, court costs, and interest on the above sums at the statutory rate for

judgments permitted under the TEXAS RULES OF CIVIL PROCEDURE.

Respectfully submitted,

Lindauer & Vaughn
117 S. Dallas Street
Ennis, Texas 75119
Tel.: (972) 503-4033
Fax.: (972) 503-4034

By: ______________________

Rebecca T. Vaughn
Texas Bar No. 24098510
Email: becca@joycelindauer.com
Attorney for Plaintiff

# EXHIBIT D

Notice to Pay Rent or Vacate, September 8, 2026

In re Jessica Escue, Case No. 26-43461 (Bankr. E.D. Tex.)

TEXAS REALTORS

# NOTICE TO PAY RENT OR VACATE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2026

To: Jessica Escue (Tenant)

From: Stephen Harcus (Landlord)

Re: Lease concerning the Property at 1929 N Lake Trail, Denton, TX 76201

A. Notice: Tenant is in breach of the above-referenced Lease due to the nonpayment of rent.

B. Opportunity to Cure: To avoid further action, Tenant must:

(1) Pay $10,690.95, which is the total amount currently past due and owing under the Lease as of the date of this notice, including all unpaid rent and additional charges assessed in accordance with the Lease;

(2) Additionally, for each day after the date of this notice that rent remains unpaid, Tenant must pay an additional late charge of $25.00 per day until rent and all late charges are paid in full, as specified in the Lease; and

(3) **Tenant must remit payment in full or vacate not later than 3 day(s) after the date this notice is delivered. Payment must be made to the place of payment specified in the Lease.** *Note: Enter no less than the number of days required for notice of default specified in the Lease or, if none, notice shall be given at least 3 days before filing suit pursuant to §24.005 of the Texas Property Code.*

C. Failure to Cure: If Tenant fails to comply with the opportunity to cure as stated in Paragraph B above, Landlord may file an eviction lawsuit to terminate Tenant's right to occupy the Property.

D. Landlord is entitled to pursue all available remedies for Tenant's breach.

Landlord Date
Stephen Harcus

Or signed for Landlord under written Property Management Agreement or power of attorney:

By: [signature] 9/8/26

Printed Name: Chris Farr

Firm Name: The Mardia Group, LLC

*Means of Delivery*

- [X] *Certified Mail, Return Receipt Requested No.*
- [ ] *Affixed to inside of main entry door on* ______ *by* ______.
- [ ] *Hand delivered to* ______ *on* ______ *by* ______.
- [X] *Regular Mail*
- [X] *Electronically (if previously agreed to) via* jessicamescue@gmail.com.



The Mardia Group 825 Watters Creek Blvd Bldg MSuite 250 Allen, TX 75013 Phone. 972-727-6006 Fax: 469-519-0268 Untitled
Chris Farr Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

# Send Certified Mail - Receipt for USPS Certified Mail to Jessica Escue

**Send Certified Mail** <no_reply@sendcertifiedmail.com> Tue, Sep 8, 2026 at 6:04 PI
To: marci@tmgprop.com

Send Certified Mail.com

This is a receipt for your USPS Certified with Electronic Delivery Confirmation :
9407111898765594308544 that was created on 09/08/2026 23:04:21

**Addressed To:**

**Jessica Escue**
1929 N Lake Trail
Denton, TX 76201

The cost of this mailing was: **$8.63**

If you mailed with Certified Mail Service, please note that USPS Certified Mail requires someone to sign for the letter when it is delivered. You may track the detailed delivery information by logging into https://www.SendCertifiedMail.com. On the red navigation bar find Reports, then Summary Tracking Report. Tracking and delivery information will be updated as it is made available by USPS and securely stored in your account for 10 years.

Certified Mail comes with Delivery Confirmation and is emailed to the email address included in the Mailing Profile as a courtesy. If you do not wish to receive Electronic Delivery Confirmation emails, you may remove or change the email stored in your Mail Profile. Do this by logging into https://www.SendCertifiedMail.com. On the red navigation bar, find Management and click on Mailing Profile. Then edit or remove the email address and click next to save and exit.

If you did not select a Certified Mail service when submitting your letter and selected First-Class Mail only, you will not receive in-route tracking or delivery reports. Record of your mailing can be found on the Mail Manifest Report.

For further assistance, please contact our Customer Support Team at 800-406-1792.